## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL HINTON,** | ) | **Case No. 3:10-cv-305** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE KIM R. GIBSON** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **TIMOTHY MARK,** *Chief Hearing* | ) | |
| *Examiner,* **RAYMOND SOBINA,** | ) | |
| *Superintendent,* **PATTI MCKISSOCH,** | ) | |
| *Hearing Examiner,* **MR. PATZ,** | ) | |
| *Psychologist,* **and SANDRA GORNIAK,** | ) | |
| *Accountant,* | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Pending before the Court are Defendants' motion for summary judgment (ECF No. 88) and the Magistrate Judge's thorough and well-written report and recommendation (ECF No. 115) recommending that Defendants' motion be granted. Having conducted a de novo review of the parties' submissions and the Magistrate Judge's report and recommendation, Defendants' motion for summary judgment will be **GRANTED in part and DENIED in part**.

### I.    Introduction & Procedural Background

On December 3, 2010, Plaintiff filed this case under 42 U.S.C. § 1983 against prison officials and psychological staff at State Correctional Institution Albion ("SCI-Albion") for alleged civil-rights violations that occurred while Plaintiff was incarcerated there. Specifically, Plaintiff sued Timothy Mark, Raymond Sobina, Patti McKissoch, a "Mr. Patz," and Sandra Gorniak. In his complaint (ECF No. 3), Plaintiff alleged that—during his time at SCI-Albion—Timothy Mark was employed by the Pennsylvania Department of Corrections ("DOC") as the Chief Hearing

Examiner, Raymond Sobina was the Superintendent at SCI-Albion, Patti McKissoch was a hearing examiner at SCI-Albion, Mr. Patz was a psychologist at SCI-Albion, and Sandra Gorniak was an accountant at SCI-Albion.

In his original complaint (it has since been amended three times), Plaintiff alleged four claims: denial of access to the courts, denial of procedural due process, deliberate indifference to a serious medical need, and conspiracy to interfere with civil rights. Plaintiff's claims stem from his failed suicide attempt on January 2, 2009. On that day, he called officers to his cell, showed them nine Sinequan pills, and proceeded to swallow them. He was taken to a hospital and treated. Plaintiff alleges that, prior to swallowing the Sinequan pills, he called the prison psychologist— Mr. Patz—to his cell and informed Mr. Patz of his mental state and plan to kill himself. According to Plaintiff, Mr. Patz told him that all the psychiatric-observation cells were full and that he would have to "be cool" because Mr. Patz was heading home for the weekend and that they would speak on Monday. Plaintiff alleges that Mr. Patz took no precautions to prevent him from attempting suicide.

After returning from the hospital, Plaintiff was issued a misconduct for possession of contraband—i.e. the Sinequan pills—and for failure to report contraband. He was also assessed the costs of the medical care resulting from his suicide attempt. Further, he alleges that his inmate account was subsequently blocked for over eight months, preventing him from hiring an attorney, and that this was done without adequate due process.

Pursuant to 28 U.S.C. § 636 and Local Civil Rule 72, Plaintiff's case was referred to a magistrate judge for pretrial proceedings. After screening Plaintiff's complaint pursuant to 28 U.S.C. § 1915A, the Magistrate Judge recommended dismissing the complaint with leave to

2

amend, finding that Plaintiff had not pleaded enough facts regarding each Defendant's actions to support a plausible theory of liability. Plaintiff subsequently filed two amended complaints; one on December 29, 2010 (ECF No. 7), and one on March, 25, 2011. (ECF No. 11.) These complaints alleged a claim against Patz for deliberate indifference to Plaintiff's serious medical needs, namely his particular vulnerability to suicide. The Magistrate Judge thereafter issued another report and recommendation (ECF No. 13), wherein he explained that he had screened Plaintiff's amended complaint and found that it did not adequately allege an injury as a result of Patz's alleged deliberate indifference. The Magistrate Judge therefore recommended dismissing the complaint sua sponte for failure to state a claim. This Court adopted that recommendation and dismissed the second amended complaint on March 30, 2012, without further leave to amend. (ECF No. 17.)

On November 13, 2013, the United States Court of Appeals for the Third Circuit vacated that dismissal, holding that Plaintiff had adequately stated three claims, and remanded the case for further proceedings. (ECF No. 27, *Hinton v. Mark*, 544 F. App'x 75, 79 (3d Cir. 2013).) The three claims were: (1) a claim under the Eighth Amendment against Patz for deliberate indifference to Plaintiff's serious medical need on the basis of his risk of attempting suicide; (2) a due process claim under the Fourteenth Amendment against Mark, Sobina, and Gorniak for allegedly blocking Plaintiff from transferring $570 out of his prison account to hire an attorney; and (3) a due process claim under the Fourteenth Amendment against Mark, Sobina, McKissoch, and Gornick for charging Hinton's inmate account for the cost of medical care related to his suicide attempt without adequate due process. On remand, Plaintiff filed a third amended complaint (ECF No. 41), which restated these three claims.

3

Defendants filed motions to dismiss for failure to state a claim on June 30, 2014 (ECF No. 43), and January 28, 2015 (ECF No. 59), and raised the affirmative defense that Plaintiff had failed to exhaust his administrative remedies. The Magistrate Judge denied both motions, ordered discovery on the question of exhaustion, and set a briefing schedule for motions for summary judgment. (ECF No. 62.) After the parties filed motions for summary judgment, the Magistrate Judge issued a third report and recommendation, recommending that Defendants' motion for summary judgment be granted on all claims on the basis that Plaintiff did not exhaust his administrative remedies. (*See* ECF No. 115.) Plaintiff timely filed objections to the Magistrate Judge's third report and recommendation. (*See* ECF No. 119.)

## II. Standards of Review

### A. Reports & Recommendations and Objections Thereto

When objections are filed to a magistrate judge's report and recommendation, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see also United States v. Raddatz*, 447 U.S. 667, 674-75 (1980) (explaining the standard for a district court's review of a magistrate judge's report and recommendation). The district court may accept, reject or modify—in whole or in part—the magistrate judge's findings or recommendations. § 636(b)(1)(C). Although the standard of review is de novo, § 636(b)(1) permits whatever reliance the district court, in the exercise of sound discretion, chooses to place on a magistrate judge's proposed findings and recommendations. *Raddatz*, 447 U.S. at 676; *see also Goney v. Clark*, 749 F.2d 5, 7 (3d Cir. 1984) (noting the discretion district courts have in their use of magistrate judges' reports).

### B. Summary Judgment

Summary judgment is a sort of filtering mechanism; the operative question is whether there exists "a genuine dispute as to any material fact" of a party's claim or defense. *See* Fed. R. Civ. P. 56(a). The rationale for summary judgment is efficiency; if — to prevail on his or her claim — a plaintiff would have to prove a certain element at trial, and the defendant establishes that the plaintiff can offer no plausible evidence in support of that element, then there is no reason to let the claim proceed to trial at all. That is so because no reasonable jury would be able to find that the element is met, making summary judgment in the defendant's favor appropriate. Thus, when presented with a motion for summary judgment, the judge's function is not to weigh the evidence and determine the truth of the matter, but strictly to determine whether there is a genuine dispute to be resolved by a factfinder. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

### C. Exhaustion Under the Prison Litigation Reform Act ("PLRA")

"In an effort to curb the number of prisoner filings in the federal courts, Congress enacted the PLRA which, as relevant here, mandates that prisoners exhaust internal prison grievance procedures before filing suit." *Small v. Camden Cty.*, 728 F.3d 265, 268 (3d Cir. 2013). The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983... or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e)(a); *see Spruill v. Gillis*, 372 F.3d 218, 222 (3d Cir. 2004) (*quoting* § 1997(e)(a)).

5

"[E]xhaustion is a question of law to be determined by a judge, even if that determination requires the resolution of disputed facts." *Id.* (footnote omitted) (*citing Drippe v. Tobelinski*, 604 F.3d 778, 781 (3d Cir. 2010)).

Failure to exhaust administrative remedies is an affirmative defense—the burden of establishing failure to exhaust rests with the defendant(s) rather than the prisoner. *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002) ("Failure to exhaust administrative remedies is an affirmative defense that must be pled and proven by the defendant.") (citation omitted); *see also Jones v. Bock*, 549 U.S. 199, 211-12 (2007). In the context of summary judgment, this means a defendant asserting failure to exhaust as a defense must show that there is no genuine dispute that the prisoner failed to exhaust his administrative remedies. *See Small*, 728 F.3d at 268-69 (*citing Jones*, 549 U.S. at 212, 216-17).

"[A] prisoner need exhaust only 'available' administrative remedies." *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). But "[t]o state that standard, of course, is just to begin; courts in this and other cases must apply it to the real-world workings of prison grievance systems." *Id.* at 1859. Thus, "the actual availability of remedies may turn on questions of fact." *Shumanis v. Lehigh Cnty.*, 675 Fed. Appx. 145, 148 (3d Cir. 2017). The Supreme Court has described three instances when an administrative remedy is unavailable as a practical matter: "(1) 'it operates as a simple dead end — with officers unable or consistently unwilling to provide any relief to aggrieved inmates'; (2) it is 'so opaque that is becomes, practically speaking, incapable of use,' such as when no ordinary prisoner can discern or navigate it; or (3) 'prison administrators thwart inmates from taking

6

advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Id.* at 8-9, *quoting Ross* 136 S. Ct. at 1859-60.[1]

## III. Administrative Remedies in the Pennsylvania Department of Corrections ("DOC")

Within the DOC system, various administrative policies exist which allow inmates to challenge aspects of their confinement. Those policies include: (1) the Inmate Grievance Policy, DC-ADM 804; (2) the Inmate Discipline Policy, DC-ADM 801; and (3) the Administrative Custody policy, DC-ADM 802. As their names suggest, DC-ADM 804 covers general grievances (*see* ECF No. 91-4 at 3-17), DC-ADM 801 covers inmate discipline, including the assessment of costs for medical care and losses caused by inmate misconduct (*see* ECF No. 95-5), and DC-ADM 802 covers administrative-custody procedures. (*See* ECF No. 91-4 at 3-17.) Only DC-ADM 804 and 801 are implicated in this case.

### A. DC-ADM 804: Inmate Grievances

DC-ADM 804 describes the administrative remedies for inmate grievances. DC-ADM 804 defines a "grievance" as "[a] formal written complaint by an inmate related to a problem encountered during the course of his/her confinement." (ECF No. 91-4 at 2.)

DC-ADM 804 provides three levels of adjudication—an initial decision followed by two levels of review. (*See Id.* at 4.) Grievances are initiated by an inmate filing an inmate-grievance form, which must be filed with the Facility Grievance Coordinator within 15 days of the incident giving rise to the grievance. (*Id.* at 6-7.) The grievance should identify the persons involved in the

---

[1] This Court notes that while one Circuit Court has observed that the three scenarios described in *Ross* "do not appear to be exhaustive," that court declined to "opine on what other circumstances might render an otherwise available administrative remedy actually incapable of use." *See Williams v. Correction Officer Priatno*, 829 F.3d 118, 124 (2d Cir. 2016).

incident and "include a statement of the facts relevant to the claim." (*Id.* at 6-7.) If the Facility
Grievance Coordinator's decision on the grievance is unsatisfactory, the inmate can appeal that
decision to two subsequent tiers of review; the Facility Manager and ultimately the Chief of the
DOC Secretary's Office of Inmate Grievances and Appeals. (*See Id.* at 9-14.)

DC-ADM 804 lists three exceptions—issues that are not grievable under its provisions.
Specifically, Section VI.H. provides that initial review of "issues relating to" DOC policy DC-
ADM 801, i.e. inmate discipline, are not covered under DC-ADM 804. (*Id.* at 15.) In other words,
DC-ADM 804 explicitly states that "issues relating to" inmate discipline are not grievable under
DC-ADM 804.

## B. DC-ADM 801: Inmate Discipline

DC-ADM 801 covers inmate discipline. (*See* ECF No. 95-5.) Whereas a grievance is
initiated by an inmate, inmate discipline is initiated by a member of the prison staff filing a written
misconduct report. (*Id.* at 8.) While less-serious offenses are subject to informal resolution,[2] more-
serious offenses are resolved through formal channels. This involves a misconduct hearing before
a Hearing Examiner who determines whether the inmate is guilty of the alleged violation. (*See Id.*
at 16.) Findings of not guilty are recorded in writing and require no rationale. (*Id.*) Findings of
guilty, however, require the preparation of a written summary of the hearing, which includes the
facts the Hearing Examiner relied upon in reaching his or her decision. (*Id.*)

---

[2] Certain less-serious offenses are eligible for so-called informal resolution, whereby the inmate's Unit
Manager resolves the alleged misconduct through an informal meeting. The disciplinary measures
associated with informal resolution are less severe than those associated with formal resolution and include
such things as no discipline at all, a reprimand and warning, and loss of certain privileges like phone calls—
though any loss of privileges cannot exceed seven days. (*See* ECF No. 95-5 at 10-11.)

DC-ADM 801 provides three levels of possible review. (*See Id.* 20-22.) After a finding of guilty, the inmate has 15 days to submit a written appeal to the Program Review Committee ("PRC"). (*See Id.* at 16, 20.) There are only three valid bases for an appeal: (1) that the procedures employed were contrary to law or DOC directives or regulations; (2) that the punishment is disproportionate to the offense; or (3) that the findings of fact were insufficient to support the decision. (*Id.* at 20.) Inmates are not allowed to appeal findings of not guilty, and if they pleaded guilty then they may appeal only on the first two grounds. (*Id.*) After the PRC issues its decision, the inmate then has seven days to appeal to the Facility Manager. (*Id.* at 21.) Once the Facility Manager makes his or her decision, the inmate then has seven days to appeal to the DOC Chief Hearing Examiner's Office, Office of Chief Counsel, which provides the final level of review. (*Id.* at 22.)

## IV.  Discussion

As noted above, Plaintiff brought three claims. Defendants now move for summary judgment on the basis that Plaintiff failed to exhaust his administrative remedies. The only question before this Court is, have the Defendants met their burden to establish that Plaintiff failed to exhaust his administrative remedies with respect to each claim?

For purposes of exhaustion, Plaintiff's claims can be separated into two categories: (1) his Eighth Amendment claim and (2) his Fourteenth Amendment claims. The Court will discuss Defendants' exhaustion defenses to these claims in turn.

### A.  Did Plaintiff Exhaust His Eighth Amendment Claim?

Defendants assert that Plaintiff failed to exhaust his administrative remedies with respect to his Eighth Amendment claim against Patz. It is undisputed that Plaintiff filed three inmate

9

grievances in the four months after he attempted suicide—including one just five days after he tried to end his life—and that none of these grievances alleged that DOC personnel were recklessly indifferent or otherwise failed to protect him from suicide.[3] Defendants claim that they are entitled to summary judgment on Plaintiff's Eighth Amendment claim because Plaintiff failed to exhaust his administrative remedies under DC-ADM 804.

In response, Plaintiff contends that his Eighth Amendment claim is not barred. Plaintiff claims that the PLRA's exhaustion requirement only applies to "available" remedies. Plaintiff further asserts that the administrative remedies at SCI-Albion were, practically speaking, unavailable, excusing his requirement to exhaust them before bringing suit in federal court.

Specifically, Plaintiff asserts that he would not have been able to grieve Patz's alleged misconduct under DC-ADM 804. Plaintiff argues that (1) the text of ADM 804 states that "issues relating to" inmate discipline are not grievable, and (2) the Grievance Coordinator, Mindy Jones, testified that she would reject an 804 grievance that "pertained to the misconduct that the inmate received." (ECF No. 95-1 at 19.). Plaintiff therefore claims that administrative review under DC-ADM 804 was unavailable to him because Patz's alleged misbehavior—deliberate indifference to his suicide risk—relates and pertains to the misconduct Plaintiff received—possession of the Sinequan pills Plaintiff ingested in an attempt to end his life.

Plaintiff alleges that administrative review of Patz's alleged misconduct was similarly unavailable under DC-ADM 801. It is undisputed that DC-ADM 801 does not permit appeals

---

[3] Plaintiff filed Grievance #256881 on January 7, 2009, alleging that he was verbally harassed by inmate staff during a cell extraction. (ECF No. 90 at 2.) Plaintiff filed Grievance #264889 on March 12, 2009, alleging that his Sixth Amendment right to counsel was violated. (*Id.* at 3.) On April 23, 2009, Plaintiff filed Grievance #270359, which alleged that funds from his inmate account were being deducted in violation of his right to due process. (*Id.* at 3; ECF No. 94 at 2.)

when charges are dismissed, and only permits appeals from guilty pleas in three circumstances—when (1) "the procedures employed were contrary to law, [DOC] directives, or regulations;" (2) "the punishment is disproportionate to the offense;" or (3) "the findings of fact were insufficient to support the decision." (*See* ECF No. 91-4 at 44.) Plaintiff pleaded guilty to possession of contraband on January 9, 2009, and the failure to report charge was dismissed. (*See* ECF No. 94 at ¶¶ 87-89; ECF No. 104 at ¶¶ 87-89.) Thus, Plaintiff contends that he could not have used DC-ADM 801 to pursue his allegations of misconduct against Patz because, like DC-ADM 804, DC-ADM 801 was unavailable to him as an administrative remedy.

Additionally, Plaintiff asserts that the administrative remedies were "so opaque" that they were unavailable under *Ross*. To support this argument, Plaintiff notes the staff members of SCI-Albion gave conflicting opinions about whether DC-ADM 804 was the appropriate mechanism for complaining about staff wrongdoing related to an incident for which an inmate received a misconduct. Timothy Mark, former Chief Hearing Examiner for the DOC, testified that someone in Plaintiff's position would have been required to file a grievance against Patz under DC-ADM 804. (See ECF No. 119 at 7.) This Court notes the relevant portion of Mark's deposition testimony:

Q:   In your experience, could an inmate file an appeal to address staff misconduct that occurred during the incident he received a misconduct for?

A:   Do you have an example in mind?

Q:   For example, if an inmate received a misconduct for possession of contraband that was found during a cell search. If the inmate wanted to address the issue of that cell search being inappropriate, could he file an appeal of the misconduct to address that issue?

11

...

A: Say the cell search – the CO used unreasonable force or used some sort of inappropriate behavior, the inmate could then use the grievance procedure to file a claim against a CO for excessive force or unreasonable force or whatever occurred, and then go up the chain that the 804 provides, that's three levels, in order to exhaust administratively what the inmate perceived as inappropriate excessive force in a violation of his personal self.

Q: So the inmate could file a grievance even though that grievance would be related to a misconduct which is specific ---?

A: Well, it's not related to the misconduct, it's related to the actions or inactions of the officer as it relates to the individual. So to me it's easy to separate the two. One is the search that found the contraband, which is a misconduct in itself. But what you're talking about is the use of force or inappropriate force used by the corrections officer, which is a separate issue from the misconduct. Misconduct is finding the contraband and the inmate not disclosing it. The CO's misconduct was an 8th Amendment excessive use of force or a 4th Amendment [sic] and the result of which would be a civil rights suit.

Q: So it ---?

A: I don't --- I can't follow --- you're trying to lap the two together. But for me it's simple to see that the misconduct charge, hiding contraband, failing to turn over contraband, as a result of a cell search, is a violation of institutional rules, so it would result in an 801 misconduct...

Q: So it's your understanding that in discussing the inner play [sic] between the 801 policy on misconducts and the 804 policy on grievances, that an inmate would be able to file a grievance on staff member misbehavior even if that misbehavior occurred during an incident that he was issued misconduct for?

A: I'm not saying that ---. I'm saying the two of them are silo [sic]. The 801 is a silo, complete in itself. And 804 is a silo, complete in itself... .

(ECF No. 91-5 at 52-55.)

By contrast, Grievance Coordinator Mindy Jones testified that in some circumstances an inmate *could not* file an 804 grievance that related to the misconduct that the inmate was cited for, but would instead need to report the staff misbehavior through the appeal process under 801, the process by which an inmate can appeal a citation for misconduct:

Q: So if an inmate receives a misconduct and they have a grievance about something related to that misconduct, they cannot file a grievance about it. They have to follow the 801 appeal process?

A: Correct.

Q: As grievance coordinator in what situations would you reject a grievance for being related to misconduct?

A: If it pertained to the misconduct that the inmate perceived.

Q: So if an inmate was issued a misconduct for possessing contraband and had a complaint about a staff member during the same incident, would that be a grievance that would be rejected?

A: It would depend on how the inmate wrote the grievance.

13

(ECF No. 95-1 at 20-21.)

...

Q:     So in your understanding under what circumstances would a grievance be related
       to a misconduct such that you would reject the grievance? Give us some examples
       that you can think of?

A:     If the inmate gets a misconduct and he files a grievance complaining about the
       sanction he got or the reasons why he was issued the misconduct, anything like
       that you're going to reject it [sic].

Q:     So if the inmate filed a grievance about staff behavior that he believed caused his
       actions that led to misconduct, would you reject that grievance?

A:     It would depend on the grievance. That's the one that gets a little --- there's a grey
       area on that, because it depends on how close to the misconduct incident that he's
       talking about [sic].

(*Id.* at 37-38.)

Based on the above-quoted testimony, Plaintiff contends that Defendants Mark and Jones
have conflicting notions of the proper way for an inmate to report staff misbehavior related to a
misconduct that an inmate received. Plaintiff argues that he was not required to exhaust
administrative remedies relating to his claim against Patz, because the fact that Mark and Jones
had differing interpretations of their own grievance procedures renders them "prohibitively
opaque" and thus unavailable under *Ross*.

This is a close call. On the one hand, because the prison employees seem to disagree about
which procedures should be followed, one could argue—as Plaintiff has—that any remedies for

14

Hinton's claim against Patz were unavailable because the process was too opaque for an ordinary prisoner to navigate. However, after much deliberation, the Court is not swayed by this argument. As explained below, this Court finds that Plaintiff's Eighth Amendment claim against Patz is barred because Plaintiff failed to exhaust his available administrative remedies under DC-ADM 804.

This Court disagrees with Plaintiff's argument that the grievance process was "so opaque" that no ordinary prisoner could navigate it. While Jones and Mark may disagree about whether, in some instances, a grievance would be rejected because it "related to" the subject of the misconduct, this is inapposite to the situation at hand; Plaintiff's complaint about Patz does not "relate to" the subject of his misconduct.

Plaintiff was issued a misconduct for possession of the pills he used in an attempt to kill himself. (ECF No. 94 at ¶ 87.) He claims that Patz was deliberately indifferent for failing to treat Plaintiff earlier that day, i.e. *prior* to Plaintiff's suicide attempt. (*See, e.g.,* ECF No. 41 at 3-5.) Plaintiff's allegations against Patz were not, to quote Jones, "complaining about the sanction he got or the reasons why he was issued the misconduct." Rather, Plaintiff was complaining about the events that precipitated the actions for which he was issued a misconduct. This is illustrated by the fact that even if Plaintiff had not attempted suicide, he still would have had a claim against Patz for deliberate indifference to his serious medical need. Thus, even if Jones' statements about the availability of DC-ADM 804 reflected the "real world" policy of SCI-Albion, an administrative remedy under 804 would not have been unavailable to Plaintiff because his allegations against Patz do not "relate to" the misconduct he received.

15

Furthermore, Plaintiff has not alleged that Jones, or any other staff member at SCI-Albion, told him that he could not file a grievance against Patz. In fact, Plaintiff has not come forward with any evidence that he complained, or attempted to complain, about Patz until he filed this case in federal court. However, Plaintiff filed several grievances in the months after his suicide attempt, including one just five days after he had attempted to kill himself. (*See* ECF No. 90 at ¶ 7.) In other words, Plaintiff clearly understood how to navigate the prison's grievance process.

Furthermore, the cases that Plaintiff cites to support his claim that administrative remedies were unavailable to him do not apply here. For instance, the plaintiff in *Miller v. Coning*, 2014 U.S. Dist. LEXIS 25843 (D. Del. 2014) "filed several grievances concerning alleged retaliation by correctional officers." *Id*. at 23. But "a number of these grievances were returned to [p]laintiff as 'Non Grievable.'" *Id*. at 22. The district court held that administrative remedies were "unavailable" because the plaintiff was told that his complaints were "non-grievable." *Id*. at 25. Unlike the plaintiff in *Miller*, Plaintiff never complained about Patz or his medical treatment prior to bringing the instant suit, and was never told that his complaints about Patz could not be grieved.

Plaintiff's reliance on *Freeman v. Snyder*, 2001 U.S. Dist. LEXIS 16634 (D. Del. 2001) is similarly inapposite. There, the plaintiff "was told that he could not file a grievance to have his cell changed." *Id*. at 24-25. Thereafter, the plaintiff complied with instructions to write a letter to a captain in lieu of filing a grievance, and further made "numerous requests to have his cell moved." *Id*. In *Synder*, the District Court held that because the "correctional officers admit that they directed [the plaintiff] to contact [the captain], the defendants cannot now allege that [the plaintiff] failed to exhaust administrative remedies of which they could have easily informed

him." *Id.* at 25. Here, nobody told Plaintiff he could not file a grievance about Patz. In fact, Plaintiff made no efforts whatsoever to complain about his medical treatment.

Plaintiff's reliance on *McGrath v. Johnson,* 67 F. Supp. 2d 499 (E.D. Pa. 1999), aff'd, 35 F. App'x 357 (3d Cir. 2002) is similarly unpersuasive. There, the district court denied the defendant's motion to dismiss because the plaintiff "assert[ed] that he attempted to file a grievance but that there is an exception under the grievance policy which exempts issues concerning the administrative custody procedures from the grievance procedures." *Id.* at 511. *McGrath* does not apply here for two reasons: (1) the case dealt with a motion to dismiss, not a motion for summary judgment, and (2) there, the plaintiff actually "attempted to file a grievance." *Id.*

Plaintiff's citation to *Shumanis v. Lehigh Cnty.,* 675 Fed. Appx. 145 (3d Cir. 2017) is also unavailing. There, the Third Circuit remanded and merely discussed the possibility that the district court "might conclude that ambiguities in the [Grievance Policy and Procedure]'s text regarding grieving issues of federal law render the policy so opaque on such matters that no reasonable prisoner could discern or navigate it." *Id.* at 149. As stated above, the procedures at SCI-Albion were not "so opaque" that a reasonable prisoner could not navigate them.

Plaintiff correctly notes that, in *Campbell v. Ponte,* 2016 U.S. Dist. LEXIS 94228, the District Court for the Southern District of New York held that the administrative remedies were "prohibitively opaque," noting that "even Defendants could not determine which interpretation of their own grievance procedures to follow." *Id.* at 9. However, the plaintiff in *Campbell* "filed grievance forms with Rikers Island, requesting an investigation of the corrections officers involved in the incident and their names and shield numbers." *Id.* at 3. However, the plaintiff never received a response from the prison. *Id.* After the plaintiff filed his suit, his attorneys

17

attached copies of his grievances and requested a response, at which point the prison returned the forms and indicated they were "not grievable." *Id.* at 3-4. Contrary to Plaintiff's assertion, *Campbell* does not apply here. Unlike Plaintiff, the plaintiff in *Campbell* actually filed grievances and was told his complaints could not be grieved.

In the alternative, Plaintiff claims that administrative remedies were unavailable to him because of his severe mental illness. (*See* ECF No. 93 at 8; ECF No. 119 at 8-11.) This argument is without merit. As noted above, it is undisputed that Plaintiff filed several grievances after his attempted suicide, and that he exhausted at least one of his grievances to the final appeal stage. (*See* ECF No. 90 at ¶ 9.) This Court notes that based on its reading of these grievances, Plaintiff appears to be lucid and mentally competent. Given that Plaintiff was filing grievances during the period immediately following his suicide attempt, no reasonable juror could find that Plaintiff's mental health rendered the grievance procedure unavailable to him.

In sum, this Court finds that DC-ADM 804 was available as an administrative remedy for Plaintiff's Eighth Amendment claim against Patz. This Court also finds that Defendants have satisfied their burden to establish that Plaintiff failed to exhaust his administrative remedies. Therefore, this Court will grant Defendants' motion for summary judgment on Plaintiff's Eighth Amendment claim.

### B. Did Plaintiff Exhaust His Fourteenth Amendment Claims?

Plaintiff brings two Fourteenth Amendment claims stemming from Defendants' freezing and deducting money from his inmate account after a hearing was held on Misconduct #A842593. (ECF No. 94 at ¶ 87; ECF No. 105 at ¶ 87.) Plaintiff claims that Mark, Sobina and Gorniak violated his Fourteenth Amendment right to procedural due process by freezing his inmate account and

not allowing a transfer of \$570 for Plaintiff to hire an attorney for the Holloway hearing.[4] (Count III). (*See* ECF No. 41 at 10.) Plaintiff further claims that Mark, Sobina, McKissoch, and Gorniak violated his procedural due process rights by assessing his account for the cost of his medical care without adequate pre-deprivation notice and by preventing him from obtaining an attorney for the Holloway hearing (Count II). (*Id.* at 9-10.)

While DC-ADM 804 governs inmate grievances, DC-ADM 801 governs issues relating to misconducts that inmates receive. (*See, e.g.,* ECF No. 89 at 5.) Further, it is undisputed that DC-ADM 801 "governs the assessment or 'Holloway' hearing process." (ECF No. 94 at ¶ 75; ECF No. 105 at ¶ 75.) It is also undisputed that "[a]ll appeals of assessment hearings must be conducted as described by policy DC-ADM 801." (ECF No. 94 at ¶ 75; ECF No. 105 at ¶ 75.) Therefore, to establish the affirmative defense that Plaintiff failed to exhaust his administrative remedies with respect to his Fourteenth Amendment claims, Defendants must show that Plaintiff failed to exhaust the administrative remedies provided under DC-ADM 801.[5] As explained below, this Court finds that Defendants failed to meet their burden.

Plaintiff exhausted his administrative remedies under DC-ADM 801. As discussed in section III.2, *supra*, DC-ADM 801 provides for three levels of review. (ECF 95-5 at 20-23.) According to DC-ADM 801, the "Final Appeal" is to the "Office of Chief Counsel." (*Id.* at 22-23.) Specifically, DC-ADM 801 states that "all final submissions shall be mailed and addressed to: The

---

[4] "In DC-ADM 801, there is a provision that allows for the assessment of costs associated with a misconduct if [the inmate] was found responsible for damages resulting from his conduct." (ECF No. 90 at ¶ 33; ECF No. 94 at ¶ 33.) A *Holloway* hearing "is a hearing conducted... for the purposes of determining the actual costs incurred as a result of misconduct." (ECF No. 90 at ¶ 34; ECF No. 94 at ¶ 34.)
[5] In other words, DC-ADM 804 is irrelevant to this inquiry; since Plaintiff appealed the freezing and assessment of his inmate account as a result of the misconduct he received, the issue is whether Plaintiff exhausted the review procedures outlined in DC-ADM 801.

Chief Hearing Examiner's Office, Office of Chief Counsel...". (*Id.* at 22.) It is undisputed that, other than the three stages of review culminating in a final review from the Chief Hearing Examiner's Office, "DC-ADM 801 does not describe any other procedures for an inmate to appeal the findings of an assessment or Holloway haring." (ECF No. 94 at ¶ 84; ECF No. 105 at ¶ 84.)

The parties agree that Plaintiff "submitted a written appeal to the Chief Hearing Examiner's [O]ffice, which was received on May 15, 2009." (ECF No. 94 at ¶ 90; ECF No. 105 at ¶ 90.) The letter was addressed to "Timothy I. Mark, Deputy Chief Counsel." (ECF No. 91-11 at 2.) In his letter, Plaintiff indicated that he was appealing the Holloway Hearing Examiner's "assessing my account due to DC ADM 801 Misconduct Number 842593." (*Id.*) Plaintiff noted that he believed the assessment against his account violated official policy, and stated that the assessment "denies/robs me of any appeal process in accordance with DC-ADM as well as my right to prepare a proper defense, or any other defense to my assessment hearing." (*Id.*) Plaintiff further claims that these actions constituted "intentional violation[s] of DC-ADM 801 [and] my constitutional rights...". (*Id.*) Plaintiff concluded by requesting that the "decision for this assessment be overturned and dismissed." (*Id.* at 3.) Plaintiff's Final Appeal was ultimately denied on March 3, 2010, through a letter and order signed by Jeffrey A. Beard, Secretary of Corrections. (ECF No. 94 at ¶ 94; ECF No. 105 at ¶ 94.)

By appealing to the Office of Chief Counsel at the Chief Hearing Examiner's Office, Plaintiff satisfied the final level of review afforded him under DC-ADM 801. Plaintiff's letter made it clear that he was complaining about the assessment of his inmate account, and alleged that he had been deprived the right to present a defense at the Holloway hearing. Because Plaintiff properly appealed all the way up to the Chief Hearing Examiner's Office, Plaintiff properly

exhausted his administrate remedies under DC-ADM 801. *See, e.g., Harris v. Ferguson*, No. 3:16-CV-1965, 2017 WL 3611752, at \*3 (M.D. Pa. 2017) (describing the three steps of review under DC-ADM 801, and noting that after the appeal to the Office of the Chief Counsel, "an inmate will be deemed to have exhausted administrative remedies."); *Walker v. Sec. Office of SCI-Coal Twp.*, No. CIV. 3:CV-08-1573, 2010 WL 1177338, at \*2-3 (M.D. Pa. 2010) (stating that "the inmate has one last avenue of appeal to the Office of the Chief Counsel" and noting that "[o]nce all these steps are pursued, an inmate will be deemed to have exhausted administrative remedies."); *McClain, Jr. v. Alveriaz*, No. CIV.A.07-5551, 2009 WL 3467836, at \*6 (E.D. Pa. 2009) (same).

Defendants do not dispute that Plaintiff appealed through DC-ADM 801 all the way up to the Office of Chief Counsel at the Chief Hearing Examiner's Office. Rather, Defendants claim that Plaintiff did not actually exhaust the administrative process because he did not appeal the final order from the Office of Chief Counsel, signed by Jeffrey A. Beard, the Secretary of Corrections. (ECF No. 89 at 6.) In support of this claim, Defendants cite to a portion Mark's testimony where he states that the third step of DC-ADM 801's appellate process, i.e. the letter to the Chief Hearing Examiner's Office—which DC-ADM 801 states is the "Final Appeal"—is not *actually* the end of the administrative process, because an inmate has 30 days to appeal the Chief Hearing Examiner's order to the Commonwealth Court. (ECF No. 91-5 at 77 ¶ 5-83 ¶ 17.) This argument is completely without merit and borders on being frivolous. As noted above, the text of DC-ADM 801 states that the appeal to the Chief Hearing Examiner's Office is the "Final Appeal," and does not mention any further avenues for administrative review of inmate misconducts. (ECF No. 95-5 at 22.) As noted above, the case law clearly indicates that an inmate exhausts his administrative remedies under DC-ADM 801 by appealing the decision to the Chief

21

Hearing Examiner's Office, which Plaintiff did here. And it is undisputed that the "final Holloway Opinion and Order... d[id] not contain any reference to the availability of subsequent appeals." (ECF No. 94 at ¶ 96; ECF No. 105 at ¶ 96.)

In sum, this Court finds that Defendants have not satisfied their burden to establish that Plaintiff failed to exhaust his administrative remedies under DC-ADM 801. Therefore, this Court will deny Defendants' motion for summary judgment on Plaintiff's Fourteenth Amendment claims. [6]

## V.   Conclusion

In conclusion, this Court finds that Defendants have established that Plaintiff failed to exhaust his available administrative remedies under DC-ADM 804 relating to Eighth Amendment claim. However, Defendants have not established that Plaintiff failed to exhaust his administrative remedies under DC-ADM 801 for his Fourteenth Amendment claims. Therefore, this Court will grant summary judgment in favor of Defendants on Plaintiff's Eighth Amendment claim, and will deny Defendant's motion for summary judgment on Plaintiff's Fourteenth Amendment claims.

An appropriate order follows.

---

[6] Because the parties only briefed the exhaustion issue, the Court will not address the merits of Plaintiff's Fourteenth Amendment claims.

22

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL HINTON, | ) | Case No. 3:10-cv-305 |
| | ) | |
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| v. | ) | |
| | ) | |
| TIMOTHY MARK, *Chief Hearing* | ) | |
| *Examiner,* RAYMOND SOBINA, | ) | |
| *Superintendent,* PATTI MCKISSOCH, | ) | |
| *Hearing Examiner,* MR. PATZ, | ) | |
| *Psychologist,* and SANDRA GORNIAK, | ) | |
| *Accountant,* | ) | |
| Defendants. | ) | |

ORDER

**AND NOW,** this 29th day of September, 2017, upon consideration of the motion for summary judgment filed by Defendants (ECF No. 88) and the Report and Recommendation filed by the Magistrate Judge (ECF No. 115), and for the reasons set forth in the accompanying memorandum opinion, **IT IS HEREBY ORDERED** that the Magistrate Judge's Report and Recommendation is not adopted, and Defendants' motion for summary judgment is **GRANTED in part and DENIED in part** as follows:

1. Count I of the third amended complaint (ECF No. 41) is dismissed with prejudice. Defendant Mr. Patz is therefore dismissed as a party.

2. The motion is denied in all other respects.

**BY THE COURT:**

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**